**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| CONTINENTAL AUTOMOTIVE SYSTEMS, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) | C.A. No. 21-345-MN |
| | ) | |
| NOKIA CORPORATION, NOKIA OF AMERICA CORPORATION, NOKIA SOLUTIONS AND NETWORKS OY, and NOKIA TECHNOLOGIES OY, | ) ) ) ) ) | |
| Defendants. | ) ) ) | |

<u>**DEFENDANTS' OPENING BRIEF IN SUPPORT OF**</u>
<u>**THEIR MOTION TO DISMISS**</u>

OF COUNSEL:

Matthew D. Richardson
matt.richardson@alston.com
Mark A. McCarty
mark.mccarty@alston.com
Andrew J. Tuck
 andy.tuck@alston.com
Alston & Bird LLP
1201 West Peachtree Street
Atlanta, GA 30309
Telephone: 404-881-7000
Facsimile: 404-881-7777

Dated: April 9, 2021

Kelly E. Farnan (#4395)
Blake Rohrbacher (#4750)
Richards, Layton & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
(302) 651-7700
farnan@rlf.com
rohrbacher@rlf.com

*Attorneys for Defendants Nokia Corporation,*
*Nokia of America Corporation, Nokia Solutions*
*and Networks Oy, and Nokia Technologies Oy*

# TABLE OF CONTENTS

I.   STATEMENT OF THE CASE ........................................................................... 2

II.  LEGAL STANDARDS ...................................................................................... 4

III. ARGUMENT ..................................................................................................... 5

   A.   The Court Lacks Personal Jurisdiction Over the Foreign Nokia
        Defendants ................................................................................................. 5

        1.   There Is No General Jurisdiction ................................................. 6

        2.   There Is No Consent Jurisdiction ................................................ 6

        3.   There Is No Specific Jurisdiction ................................................. 7

   B.   Continental US Lacks Standing to Bring Its Claims ........................ 10

   C.   Continental US's SULA Claim Fails as a Matter of Law .................... 11

        1.   TCUs Are Not Covered by the SULA ......................................... 12

        2.   Continental US Has No Right Under the SULA to
             Offensively Assert a Claim Against Nokia ................................ 13

        3.   Continental US Has Not Alleged Any Damages ....................... 14

   D.   Continental US's Declaratory Request Is Improper ........................... 15

        1.   Continental US Seeks an Improper Advisory Opinion ........... 15

        2.   Exhaustion Is a Defense to a Particularized
             Infringement Claim That Has Not Been Identified or
             Asserted .......................................................................................... 17

IV.  CONCLUSION ............................................................................................... 18

# **TABLE OF AUTHORITIES**

**Page(s)**

CASES

*Acorda Therapeutics, Inc. v. Mylan Pharms. Inc.*,
  78 F. Supp. 3d 572 (D. Del. 2015)................................................................5

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)......................................................................................4

*Bowers v. NETI Techs., Inc.*,
  690 F. Supp. 349 (E.D. Pa. 1988) ...............................................................8

*Broadcom Corp. v. Qualcomm Inc.*,
  C.A. No. 8-1829, 2009 WL 684835 (S.D. Cal. Mar. 12, 2009)..................18

*Burger King Corp., v. Rudzewicz*,
  471 U.S. 462 (1985)......................................................................................7

*Const. Party of Pa. v. Aichele*,
  757 F.3d 347 (3d Cir. 2014).........................................................................4

*Cont'l Auto. Sys., Inc. v. Avanci, LLC*,
  C. A. No. 19-02933-M (N.D. Tex. Sept. 10, 2020), D.I. 316............................3, 4, 11

*Cont'l Auto. Sys., Inc. v. Avanci, LLC, et al.*,
  C.A. No. 19-CV-02520-LHK (N.D. Cal. Dec. 11, 2019), D.I. 204............................3

*Cont'l Auto. Sys., Inc. v. Avanci, LLC, et al.*,
  C.A. No. 19-cv-02933-M (N.D. Tex. Oct. 12, 2020), D.I. 323 ...................................1

*Crypton Future Media, Inc. v. Hologram U.S., Inc.*,
  C.A. No. 14-1247-RGA, 2015 WL 5234042 (D. Del. Sept. 8, 2015) .........................17

*D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd.*,
  566 F.3d 94 (3d Cir. 2009).........................................................................7

*Daimler AG v. Bauman*,
  571 U.S. 117 (2014)..................................................................................6, 9

*E.I. du Pont de Nemours & Co. v. Agfa-Gavaert NV*,
  335 F. Supp. 3d 657 (D. Del. 2018)..............................................................4

*Freres v. SPI Pharma, Inc.*,
  629 F. Supp. 2d 374 (D. Del. 2009)..............................................................4

*Grayzel v. Bos. Sci. Corp.*,
  No. 12-2506, C.A. No. 12-2506, 2013 WL 1010321 (D.N.J. Mar. 13, 2013).......15, 16

*Hartig Drug Co., Inc. v. Senju Pharm. Co. Ltd.*,
  836 F.3d 261 (3d Cir. 2016)...........................................................................................4, 5

*Holland Am. Line, Inc. v. Wartsila N. Am., Inc.*,
  485 F.3d 450 (9th Cir. 2007) .............................................................................................7

*ICT Pharms., Inc. v. Boehringer Ingelheim Pharms., Inc.*,
  147 F. Supp. 2d 268 (D. Del. 2001)...................................................................................4

*In re McGraw-Hill Glob. Educ. Holdings LLC*,
  909 F.3d 48 (3d Cir. 2018).................................................................................................7

*Interdigital Commc'ns, Inc. v. ZTE Corp.*,
  C.A. No. 13-00009-RGA, 2014 WL 2206218 (D. Del. May 28, 2014) .....................17

*IPA Techs., Inc. v. Amazon.com, Inc.*,
  352 F. Supp. 3d 335 (D. Del. 2019)............................................................................4, 14

*Katz v. Apuzzo*,
  C.A. No. 17-1328 (MN), 2019 WL 3219513 (D. Del. July 17, 2019) ..........................6

*Lorenzetti v. Hodges*,
  62 A.3d 1224 (Del. 2013) .................................................................................................15

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992)..........................................................................................................10

*MedImmune, Inc. v. Genentech, Inc.*,
  549 U.S. 118 (2007)..........................................................................................................17

*Reilly v. Ceridian Corp.*,
  664 F.3d 38 (3d Cir. 2011)..........................................................................................10, 11

*Rieger v. Drabinsky (In re Livent, Inc. Noteholders Sec. Litig.)*,
  151 F. Supp. 2d 371 (S.D.N.Y. 2001)............................................................................14

*Robert Bosch LLC v. Alberee Prods. Inc.*,
  70 F. Supp. 3d 665 (D. Del. 2014)....................................................................................6

*Site Microsurgical Sys., Inc. v. Cooper Cos., Inc.*,
  797 F. Supp. 333 (D. Del. 1992)......................................................................................11

*Step-Saver Data Sys., Inc. v. Wyse Tech.*,
  912 F.2d 643 (3d Cir. 1990)........................................................................................15, 16

*Vizant Techs., LLC v. Whitchurch*,
    97 F. Supp. 3d 618 (E.D. Pa. 2015) ...............................................................................9

*Zombeck v. Amada Co. Ltd.*,
    C.A. No. 06-953, 2007 WL 4105231 (W.D. Pa. Nov. 15, 2007) .................................8

**RULES**

Fed. R. Civ. P. 12 ...........................................................................................................4, 14

Continental Automotive Systems, Inc.'s ("Continental US") Complaint must be dismissed because this Court lacks personal jurisdiction over several of the Nokia Defendants, because Continental US lacks standing to bring the claims that it currently asserts, and because the Complaint fails to state a claim for which relief can be granted.  Specifically:

- This Court lacks personal jurisdiction over Nokia Corp., Nokia Solutions and Networks Oy, and Nokia Technologies Oy (the "Foreign Nokia Defendants," collectively with Nokia America, "Nokia").  None of these three Defendants have their headquarters or principal places of business in Delaware, nor does Continental US allege that any of the Foreign Nokia Defendants engaged in any alleged misconduct in Delaware that gives rise to its claims;

- Continental US lacks standing to bring this suit because it was not a party to any of the alleged misconduct that gives rise to its claims.  The basis for Continental US's claims is that Nokia's conduct in licensing negotiations has been improper.  But Nokia did not negotiate with Continental US, and was not even aware of its existence prior to Continental US filing suit against Nokia.  Instead, Nokia negotiated exclusively with Continental US's affiliate (Continental Automotive GmbH), located in Germany.  It is well-established a company does not have standing to sue merely because its affiliate may have a claim; and

- Continental US's claim that it has third-party beneficiary rights under Nokia's patent license agreement with Qualcomm fails as a matter of law because that contract makes clear that Continental US can only enforce third-party beneficiary rights if Nokia sues it first, which Nokia has not done.

This is Continental US's second lawsuit against Nokia arising out of Continental US's purported attempts to obtain licenses to certain Nokia cellular standard essential patents ("SEPs").  After one federal district court dismissed Continental US's Sherman Act claims with prejudice (with the case currently on appeal to the Fifth Circuit, *see Cont'l Auto. Sys., Inc. v. Avanci, LLC, et al.*, C.A. No. 19-02933-M (N.D. Tex. Oct. 12, 2020), D.I. 323), Continental US decided not to wait for the outcome of the appeal, but to instead file new and overlapping claims in this Court.  But Continental US's recycled claims still suffer from a host of jurisdictional and legal defects that require dismissal.

I.       STATEMENT OF THE CASE

Continental US alleges that it is a "provider" and "supplier" of telematics control units ("TCUs"), devices used by automobile manufacturers to allow for wireless connectivity (e.g., GPS, interface software, and control functions).  D.I. 1-1 ("Compl.") ¶¶ 1-3.  Continental US does not contend that it manufactures TCUs, but rather alleges that its role is "developing and commercializing" the TCUs that automakers install in their vehicles to facilitate connected functions, as well as conducting "quality control" and "related legal issues (*e.g.*, intellectual property and open source reviews)."  *Id.* ¶ 14.  Continental US alleges that it is an "indirect subsidiary of Continental AG, a corporation organized and existing under the laws of Germany" and not a party to this lawsuit.  *Id.* ¶ 13.  Continental US specifically defines the word "Continental" to mean Continental US, and not any other Continental parent or affiliate.  *See* Compl. at 1 ("Plaintiff Continental Automotive Systems, Inc. ('Continental' or 'Plaintiff')").

Continental US alleges that "Nokia"—which it defines as each and every Nokia Defendant—has pursued various automakers that incorporate TCUs into their vehicles with infringement claims related to Nokia's cellular SEPs.  *Id.* ¶ 8. Continental US also alleges that it has attempted to obtain a license to Nokia's SEPs since 2017, but Nokia refused, and did not ultimately make any offer until September of 2020.  *Id.* ¶¶ 8-9.  Continental US alleges that Nokia's offer did not include a "complete" license on FRAND terms, and that its repeated "attempts to obtain a FRAND license from Nokia have been unsuccessful."  *Id.* ¶¶ 7, 9, 52.

According to Continental US, "Continental's customers commonly require that Continental secure all necessary licenses and supply products free of third-party IP rights, and further that Continental indemnify its customers for the cost of any patent infringement claims related to Continental's products."  *Id.* ¶ 10.  Consequently, Continental US alleges it has "faced

numerous customer demands for indemnity based on the assertion and licensing of Nokia's patents, including demands that Continental reimburse the customer for royalties [the customer voluntarily paid] pursuant to a pool license which includes Nokia's patents." *Id.*  Significantly, Continental US does not allege that it has actually paid any OEMs under any purported indemnification agreements or even agreed to reimburse any OEMs for any royalties paid to Nokia—let alone any royalties that exceeded FRAND.

Making nearly identical allegations, Continental US previously sued Nokia and various other defendants for purported breaches of FRAND obligations as well as Sherman Act and California common law and statutory violations in the Northern District of California—a case that was transferred to the Northern District of Texas, given the lack of any connection between Continental US or its claims to the forum Continual US chose.  *See Cont'l Auto. Sys., Inc. v. Avanci, LLC, et al.*, C.A. No. 19-CV-02520-LHK (N.D. Cal. Dec. 11, 2019), D.I. 204.  The Northern District of Texas dismissed Continental US's federal antitrust claims with prejudice for failure to establish antitrust injury and declined to exercise jurisdiction over Continental US's state law claims.  *Cont'l Auto. Sys., Inc. v. Avanci, LLC*, C. A. No. 19-02933-M,  (N.D. Tex. Sept. 10, 2020), D.I. 316 at 16.  That case is currently on appeal to the Fifth Circuit, with briefing underway.

Rather than await the outcome of the appeal, Continental US decided to refile its state law claims at issue in the Fifth Circuit appeal here in Delaware, adding an additional claim that Nokia has breached a 2008 Subscriber Unit and Infrastructure Equipment License Agreement ("SULA") between Nokia Corporation and Qualcomm.  *See* Compl. at Counts Two and Three.[1] According to

---

[1]  The SULA attached to Continental US's Complaint makes clear that the agreement was "between Qualcomm Incorporated, a Delaware corporation, and Nokia Corporation, a Finnish corporation."  Compl. Ex. 1 at 1.

Continental US, it is entitled to certain royalty rates under the SULA, and Nokia's SEPs are "exhausted" for any products that incorporate a Qualcomm chip as a result of that agreement. *Id.*

## II.      LEGAL STANDARDS

The Court must dismiss a plaintiff's claims under Fed. R. Civ. P. 12(b)(2) when the plaintiff fails to set out a prima facie case of personal jurisdiction. *Freres v. SPI Pharma, Inc.*, 629 F. Supp. 2d 374, 382 (D. Del. 2009).  Once a personal jurisdiction defense has been raised, the plaintiff bears the burden of "establishing with reasonable particularity" the basis for exercising personal jurisdiction. *E.I. du Pont de Nemours & Co. v. Agfa-Gavaert NV*, 335 F. Supp. 3d 657, 665 (D. Del. 2018); *accord ICT Pharms., Inc. v. Boehringer Ingelheim Pharms., Inc.*, 147 F. Supp. 2d 268, 270–71 (D. Del. 2001).

A plaintiff's claims must be dismissed under Rule 12(b)(6) where, even accepting the well-pleaded allegations as true, the Court concludes that those allegations "could not raise a claim of entitlement to relief[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007).  The Court is "not required to credit bald assertions or legal conclusions improperly alleged in the complaint." *IPA Techs., Inc. v. Amazon.com, Inc.*, 352 F. Supp. 3d 335, 342 (D. Del. 2019).  Instead, the plaintiff must plead facts sufficient to establish the "substantive plausibility" of its claims. *Id.* (quotation omitted).

A Rule 12(b)(1) challenge attacks allegations underlying the assertion of jurisdiction in the complaint, and it allows the defendant to present competing facts.  *Const. Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014).  Then, "the plaintiff has the burden of proof that jurisdiction does in fact exist, the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case, and no presumptive truthfulness attaches to the plaintiff's allegations." *Hartig Drug Co., Inc. v. Senju Pharm. Co. Ltd.*, 836 F.3d 261, 268 (3d Cir. 2016) (cleaned

up).  "Therefore, a 12(b)(1) factual challenge strips the plaintiff of the protections and factual deference provided under 12(b)(6) review."  *Id.*

## III.   ARGUMENT

Continental US's Complaint must be dismissed because the Court lacks personal jurisdiction over the Foreign Nokia Defendants, because Continental US is the wrong party to assert any claim against Nokia, and because Continental US's substantive claims fail to state a claim upon which relief can be granted.

### A.   The Court Lacks Personal Jurisdiction Over the Foreign Nokia Defendants

To establish personal jurisdiction over the Foreign Nokia Defendants, Continental US must show either (1) general jurisdiction; (2) consent jurisdiction; or (3) specific jurisdiction. Continental US's allegations fail to satisfy any of these requirements.  Continental US alleges three different bases for personal jurisdiction: (1) the Foreign Nokia Defendants previously brought litigation against two non-party entities, Qualcomm and Apple Inc., in Delaware (Compl. ¶¶ 22–23); (2) the Foreign Nokia Defendants have "expressly consented to jurisdiction" because Nokia Corporation's contract with non-party Qualcomm includes a forum selection clause for the Delaware Court of Chancery (*id.* ¶ 22); and (3) the Foreign Nokia Defendants "conducted and continue[] to conduct business in this judicial district," and "derive[] substantial revenue [through] licensing companies that sell standard-compliant products in Delaware."  (*Id.* ¶¶ 21, 24).  None of these allegations is sufficient to satisfy the requisite minimum contacts analysis.[2]

---

[2] Determining the existence of personal jurisdiction is a two-part analysis, which considers both the relevant state's long-arm statute and the limitations imposed by the Due Process Clause of the United States Constitution.  *Acorda Therapeutics, Inc. v. Mylan Pharms. Inc.*, 78 F. Supp. 3d 572, 580 (D. Del. 2015).  Because courts have interpreted Delaware's long-arm statute to confer jurisdiction to the full extent permitted by due process, Nokia proceeds directly to the due process analysis.  *See, e.g., Robert Bosch LLC v. Alberee Prods. Inc.*, 70 F. Supp. 3d 665,

### 1.    *There Is No General Jurisdiction*

As a starting point, the Complaint acknowledges that the Foreign Nokia Defendants are Finnish companies headquartered in Finland.  Compl. ¶¶ 16, 18-19.  It is axiomatic that in order to establish general jurisdiction, a plaintiff must show that the defendant has either its place of incorporation or its principal place of business in a jurisdiction.  *See Daimler AG v. Bauman*, 571 U.S. 117, 138 (2014) (general jurisdiction is available in place of incorporation or principal place of business).  Continental US has not alleged that the Foreign Nokia Defendants satisfy either requirement.  In an attempt to evade this point, Continental US alleges simply that the Foreign Nokia Defendants have continuous and systematic contacts with the forum, but fails to specify those contacts.  Absent being incorporated or maintaining a principal place of business in a forum, the mere allegation of continuous and systematic contacts is insufficient.  *See Katz v. Apuzzo*, C.A. No. 17-1328 (MN), 2019 WL 3219513, at *2 (D. Del. July 17, 2019)  ("The 'paradigm' all-purpose forums for general jurisdiction is an individual's domicile and a corporation's place of incorporation and principal place of business.  The Supreme Court rejected the notion that 'continuous and systematic' contacts alone could confer general jurisdiction . . .").

### 2.    *There Is No Consent Jurisdiction*

Continental US's argument that the Foreign Nokia Defendants consented to jurisdiction in Delaware likewise fails.  Continental US makes this assertion on the basis that the SULA between Nokia Corp. and Qualcomm includes a Delaware Court of Chancery forum selection clause.  *See* Compl. ¶ 22.  As set out more fully below, the SULA does not provide Continental US with a basis to assert its claims and the forum selection clause therefore does not apply. *See infra*, Section III.C;

---

673 (D. Del. 2014) ("The Delaware long-arm statute has been broadly construed to confer jurisdiction to the maximum extent possible under the due process clause.") (quotation marks omitted).

*see also Holland Am. Line, Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450 (9th Cir. 2007) (holding that because a forum selection clause did not apply to the litigation, the plaintiff had failed to establish jurisdiction over several international entities); *In re McGraw-Hill Glob. Educ. Holdings LLC*, 909 F.3d 48, 59 (3d Cir. 2018) (holding that third parties were not intended beneficiaries and thus not subject to a forum selection clause).   Perhaps understanding that the SULA's forum selection clause is inapplicable, Continental did not assert it as a basis for remanding this case to the Court of Chancery.  *See* D.I. 6.

### 3. *There Is No Specific Jurisdiction*

To establish "specific jurisdiction," Continental US must show that the Foreign Nokia Defendants "purposefully directed [their] activities at [Delaware]," ***and*** that Continental US's claims "result[] from alleged injuries that 'arise out of or relate to' those forum activities[.]" *Burger King Corp., v. Rudzewicz*, 471 U.S. 462, 472-73 (1985); *D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 102 (3d Cir. 2009).  Only if those showings are made should the Court consider the "notions of fair play and substantial justice." *D'Jamoos*. 566 F.3d at 102.  None of these gating criteria are met.

***First***, Continental US's claims against the Foreign Nokia Defendants do not "arise out of or relate to" any of their activities in Delaware.  The thrust of Continental US's claims is that Nokia breached its FRAND obligations by failing to make a FRAND-compliant offer for a license to Nokia's portfolio of standard essential patents.  But nowhere in Continental US's Complaint is there any allegation that any of the alleged misconduct giving rise to this claim actually occurred in Delaware.  For example, Continental US has not alleged that the parties held negotiations in Delaware, or that any relevant licensing employees lived or worked in Delaware, or that Continental US made or received a single licensing offer in Delaware.  As set forth below, there

is a good reason for this—the Foreign Nokia Defendants only became aware of Continental US's existence and purported role in licensing when Continental US appeared as a plaintiff in the original overlapping case filed in the Northern District of California.  **Ex. A** ("Holopainen Decl.") ¶¶ 4, 20-23.   Nokia negotiates directly with Continental US's German affiliate, Continental Automotive GmbH, which is not physically or legally present in Delaware and tellingly is not a party to this litigation (nor was it a party to the prior overlapping claims that are currently pending in the Fifth Circuit appeal).

    ***Second***, specific jurisdiction cannot be based on the fact that the Foreign Nokia Defendants previously litigated against third parties.   Continental US contends that jurisdiction is proper because the Foreign Nokia Defendants have previously been involved in lawsuits against two non-party entities, Qualcomm and Apple Inc., in Delaware.  Compl. ¶¶ 22–23.  But the mere fact that a party has litigated in a forum is insufficient to establish that it is subject to specific jurisdiction there.  *See Bowers v. NETI Techs., Inc.*, 690 F. Supp. 349, 356 (E.D. Pa. 1988) (rejecting the argument that the defendants' presence as parties in prior lawsuit was sufficient to exercise personal jurisdiction).   Instead, Continental US must point to something unique about those lawsuits that form the basis of their claim.  *See Zombeck v. Amada Co. Ltd.*, C.A. No.  06-953, 2007 WL 4105231, at *6 (W.D. Pa. Nov. 15, 2007) ("However, Plaintiff has not provided any evidence establishing that the three previous cases are related to the current claim, and it does not follow that this Court can exercise jurisdiction . . . simply because it has litigated these other cases.").

    Here, Continental US relies on the fact that Nokia Corporation and Nokia, Inc. were plaintiffs in a lawsuit with Qualcomm in 2006 over similar issues, and that the lawsuit resulted in a license to which Continental US claims to be a third-party beneficiary.   That reliance is

misplaced.  First, Nokia Solutions and Networks Oy, and Nokia Technologies Oy were not parties to that lawsuit, so this argument necessarily fails with respect to those parties.  Second, as set forth below, Continental US is demonstrably *not* a third-party beneficiary to that license.  But even if it were, the mere fact that the license resulted from Delaware litigation does not mean that *the Delaware litigation itself* has anything to do with Continental US's claims or in any way creates specific personal jurisdiction.

**Third**, Continental US has failed to allege facts demonstrating that ***each Nokia Defendant*** has the requisite minimum contacts with the forum to confer jurisdiction, as it must in order to establish jurisdiction.  *Daimler*, 571 U.S. at 139.  Continental US's conclusory allegations that "Nokia" has contacts with Delaware are insufficient to make out a prima facie case of jurisdiction. *See Vizant Techs., LLC v. Whitchurch*, 97 F. Supp. 3d 618, 628 (E.D. Pa. 2015) ("Each defendant's contacts with the forum State must be assessed individually.").

**Fourth**, Continental US has failed to establish that the exercise of specific jurisdiction would comport with traditional notions of fair play and substantial justice. The Foreign Nokia Defendants are Finnish companies with their principal places of business in Finland.  *See* Compl. ¶¶ 17–19.  The Foreign Nokia Defendants do not have employees or witnesses in Delaware or any other reasonable connections here.  **Ex. A**, Holopainen Decl. ¶¶ 2, 23–24*.*  Moreover, Continental US has already hauled Nokia into court in the Northern District of California in a case that was transferred to the Northern District of Texas and is currently on appeal to the Fifth Circuit.[3] Compelling the Foreign Nokia Defendants to litigate in Delaware for yet another Continental US

---

[3]  Notably, Continental US asserted claims in the Northern District of California that were based on the Clayton Act, which provided an entirely different (nationwide) framework for assessing personal jurisdiction over the Foreign Nokia Defendants.

lawsuit related to Nokia's SEPs would be highly burdensome and would prejudice the Foreign Nokia Defendants' defense.

### B.   Continental US Lacks Standing to Bring Its Claims

The allegations that "Continental" could not obtain a license from Nokia, and that "Continental" fears the threat of indemnification from automotive OEMs if it ultimately pays supra-FRAND fees for licenses fall far short of articulating an imminent injury to *Continental US* sufficient to establish Article III standing.  "Allegations of possible future injury are not sufficient to satisfy Article III . . . . Instead, a threatened injury must be certainly impending."  *Reilly v. Ceridian Corp.*, 664 F.3d 38, 42 (3d Cir. 2011) (quotations omitted); *accord Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).  Continental US's allegations do not include any certainly impending injury at all, let alone to itself.

*First*, Continental US's fast-and-loose use of the term "Continental" attempts to gloss over (or misstate) a critical fact:  Nokia conducts licensing negotiations with a separate company, Continental Automotive GmbH, which is not a party to this case and is based in Germany.  **Ex. A**, Holopainen Decl. ¶¶ 3–10.  The allegation that "Continental contacted Nokia in 2017 in an attempt to negotiate a FRAND license to the alleged SEPs asserted against its customers" is wrong— Continental US (the only Continental entity that is a party to this lawsuit) did not contact Nokia to seek a license in 2017.  Instead, it was an entirely different company—Continental Automotive GmbH—that contacted Nokia for a license, and Nokia was not even aware of Continental US's existence until it surfaced as a plaintiff in the original overlapping case filed in the Northern District of California.  The mere fact that another company in the same corporate family believes it may have a claim does not mean that an affiliate has standing to assert such a claim.  To the contrary, it is axiomatic that affiliates do not have standing to sue on behalf of another company

merely because the two companies are in the same corporate family.  *See, e.g.*, *Site Microsurgical Sys., Inc. v. Cooper Cos., Inc.*, 797 F. Supp. 333, 338-39 (D. Del. 1992) (parent-subsidiary relationship is insufficient to confer standing to sue for alleged patent infringement).

*Second*, even if the Court ignores the corporate form and accepts Continental US's allegations about "Continental's" negotiations and purported indemnification obligations, the mere fear that Nokia *may* obtain royalties from an OEM that *may* exceed a FRAND rate, and that those OEMs *may* in turn seek indemnification from "Continental" is too attenuated to create Article III standing to sue.  *See, e.g.*, *id.*; *see also Reilly*, 664 F.3d at 42.[4]  As the district court in Texas has already decided, Continental US's allegations about fear of indemnification simply do not create Article III standing.  *Cont'l Auto. Sys. v. Avanci*, C.A. No. 19-02933-M, (N.D. Tex. Sept. 10, 2020), D.I. 316 at 8 ("[Continental US] does not sufficiently plead a non-speculative, concrete, or imminent injury as to the potential that it will be required to indemnify its OEMs.").

## C.   Continental US's SULA Claim Fails as a Matter of Law

Continental US's allegations that it is a third-party beneficiary entitled to any rights under Nokia's 2008 SULA with Qualcomm are belied by the express terms of the SULA that is attached to the Complaint.  Because there were no third-party rights, Nokia never breached any agreement and Continental US has never suffered any damages.

---

[4] Continental US ignores that if OEMs take licenses at FRAND rates, Continental US would suffer no injury even if it were forced to indemnify the OEMs.  Continental US does not take the position that paying a FRAND rate for rights to use cellular SEPs constitutes an injury.  Thus, any "injury" from speculative indemnification would be contingent upon the OEM actually negotiating and accepting a supra-FRAND rate, or a *court* imposing a supra-FRAND rate as part of an infringement action.

### 1.     TCUs Are Not Covered by the SULA

Count Two of Continental US's Complaint erroneously presupposes that the SULA covers its products.  According to Continental US, it is "a third party beneficiary of the [SULA] agreement between Qualcomm and Nokia, and sells products covered by the agreement."  Compl. ¶ 73.  But Continental US alleges that it is "a Tier 1 supplier of TCUs to various automotive original equipment manufacturers (OEMs), *i.e.*, car makers" who, in turn, install the TCU as a component device into a car before it is utilized.  Compl. ¶¶ 2-3.  In other words, Continental US sells component parts that are installed into larger systems inside of vehicles before they are used to practice the relevant standards.  Those component parts are not included within the scope of the SULA's third-party beneficiary rights.

To the contrary, Section 5.3 of the SULA makes clear that the SULA creates third-party beneficiary rights only in connection with "Modem Cards" and "Subscriber Terminals" that incorporate chips manufactured by Qualcomm. *See* SULA at 5.3(1)-(2). Continental US manufactures neither.  "Modem Card" is defined to mean "a  complete end user modem card" that "implements multiple access wireless air interface" in accordance with the relevant standards "when connected to another device by an end user by . . . a physical or wireless consumer interface."  SULA at 3, 6, 10.  Nowhere does Continental US allege that it manufactures "Modem Cards."

Second, "Subscriber Terminal" is defined as:

[A] *complete* end-user terminal that can be utilized, without any additional equipment or components (other than a SIMN card, a battery, or other like item routinely connected to the device *by end-users* where taking the terminal into use) being attached thereto, to initiate and/or receive wireless communications in accordance with one or more of the [relevant] Standards.

SULA at 9 (emphases added). Continental US does not allege that "end-users" attach car batteries and antennas to TCUs and use them to broadcast cellular signals, nor could it plausibly do so. Instead, Continental US alleges that ***automotive manufacturers*** install the TCUs into automobiles, connect them to batteries and antennas, and combine them with vehicle infotainment centers long before the entire assemblies are utilized by any end-users. This distinction cannot be ignored for purposes of Continental US's claims.

Under the unambiguous terms of the SULA, Continental US is not entitled to any third-party beneficiary rights and its claim must fail as a matter of law.

### 2.     Continental US Has No Right Under the SULA to Offensively Assert a Claim Against Nokia

Even if Continental US did manufacture "Modem Cards" or "Subscriber Terminals" (which it does not), the SULA could not more clearly state that any third-party rights are limited to defensive rights and not available in litigation asserted ***against*** Nokia:

> Qualcomm's Components customers will be third party beneficiaries of this Section 5.3 with the right to enforce its terms, ***provided however***, subject to the following paragraph,[5] ***a Qualcomm Components customer will be permitted to enforce its rights as a third party beneficiary of this Section 5.3 <u>solely as a defense or counterclaim in Litigation initiated by Nokia</u>*** with such customer (or its distributors or customers for the accused product) in which Nokia Litigates based on any Nokia Standards Patent ("Nokia-Initiated Litigation"), unless the Qualcomm Components customer is unable (due to the nature and/or venue of the Nokia-Initiated Litigation) to enforce its rights as a third party beneficiary of this Section 5.3 as a defense or counterclaim in such Nokia-Initiated Litigation (in which case the Qualcomm Components customer may enforce its rights as a third party beneficiary of this Section 4.3 in accordance with the terms of the first and second paragraphs of Section 22).

---

[5] The exception in the "following paragraph" actually *bars* a "Qualcomm Components customer" from asserting rights under the SULA if Qualcomm has already initiated litigation against Nokia for a breach in connection with such customer.

SULA at Section 5.3(4) (emphases added).[6] As a result, the SULA only grants enforceable third-party beneficiary rights in an action for patent infringement initiated by Nokia. And there is one simple problem: Nokia has not initiated any such litigation against Continental US.

To the contrary, it has been Continental US that has initiated multiple lawsuits against Nokia—first, in the Northern District of California (which was then transferred to the Northern District of Texas), and now in this suit. But at no point did Nokia initiate or assert any claims against Continental US. Accordingly, under the plain language of the SULA, Continental US is contractually barred from asserting any rights as a third-party beneficiary.

### 3. *Continental US Has Not Alleged Any Damages*

Continental US's claim under the SULA fails for the additional fundamental reason that has not suffered any damages for the reasons articulated in Section III.B, *supra*. Moreover, even if Nokia had made Continental US an offer under SULA's terms, Continental US's own allegations make clear that it would not have accepted it: "For the sake of clarity, Continental asserts that a ***true FRAND royalty rate is less than the rates set forth in the [SULA] agreement between Nokia and Qualcomm***." Compl. ¶ 76 (emphasis added). As Delaware courts have made clear, "at the motion to dismiss stage, factual allegations in the complaint which contradict the specification or the claims need not be credited as true under the Rule 12(b)(6) analysis." *IPA Techs., Inc. v. Amazon.com, Inc.*, 352 F. Supp. 3d 335, 343 (D. Del. 2019); *accord Rieger v. Drabinsky (In re Livent, Inc. Noteholders Sec. Litig.)*, 151 F. Supp. 2d 371, 405-06 (S.D.N.Y. 2001) ("[A] court need not feel constrained to accept as truth conflicting pleadings that make no sense . . . or that are contradicted either by statements in the complaint itself or by documents upon which its pleadings

---

[6] The referenced Section 22 is the Delaware forum selection and choice of law clause, which would apply only if Continental US were unable to defensively assert its purported rights under the SULA in litigation brought by Nokia.

rely, or by facts of which the court may take judicial notice.").  The Complaint makes it clear that, if Nokia had extended an offer to Continental US on the SULA's terms, Continental US would have rejected it as "supra-FRAND."  Thus, Continental US suffered no damages arising from its claim that it did not receive an offer that it would have declined in any event.  *Lorenzetti v. Hodges*, 62 A.3d 1224 (Del. 2013) ("On a claim of breach of contract, the plaintiff must prove . . . resulting damages to the plaintiff.").  Allowing such a nonsensical claim to proceed through discovery and summary judgment would be an incredibly inefficient use of both the parties' and the Court's resources.

### D.     Continental US's Declaratory Request Is Improper

Lastly, Continental US's request for a declaratory judgment is improper because it seeks an advisory opinion from the Court that would not change the parties' legal status and because Continental US seeks declaratory relief with respect to an exhaustion defense for unspecified patents for which there is no live controversy between the parties.

#### 1.     Continental US Seeks an Improper Advisory Opinion

Continental US's request for declaratory relief unabashedly asks the Court to provide it with an ***option*** for a license.  Courts within the Third Circuit hold that declaratory judgments are not appropriate when "the legal status of the parties . . . would [not] be clarified" with its entry.  *Step-Saver Data Sys., Inc. v. Wyse Tech.*, 912 F.2d 643, 648 (3d Cir. 1990).  And, on this same theory, a declaratory judgment cannot be used to gain "bargaining leverage" with another party.  *Grayzel v. Bos. Sci. Corp.*, No. 12-2506, C.A. No. 12-2506, 2013 WL 1010321, at *4 (D.N.J. Mar.

- 15 -

13, 2013).[7]  Here, Continental US seeks no more than an "offer" that it can choose to walk away from.

Specifically, Continental US seeks a declaration regarding "Continental and other suppliers' [that are not parties to this case] *entitlement* to a direct license" and asks the Court to "Order Nokia to *offer* a license to Continental on the FRAND terms and conditions set by the Court."  Compl. ¶ 79; *id.* at Prayer for Relief (C)-(K) (emphases added).  But nowhere does Continental US even suggest that it would be bound to *accept* the terms of any "offer" from Nokia and, in fact, Continental US clearly suggests that if the Court were to impose the rates from the SULA, it would view that as above FRAND and unacceptable.  *See* Compl. ¶ 76 ("For the sake of clarity, Continental asserts that a true FRAND royalty rate is less than the rates set forth in the Agreement between Nokia and Qualcomm, and thus seeks a lower ultimate royalty rate in connection with the other claims asserted herein.").

By seeking a declaration that Nokia must make an "offer" to Continental US for a license, it is clear that Continental US seeks nothing more than a piece of "bargaining leverage" for business negotiations between Nokia and *the automotive manufacturers* that should be taking licenses as the manufacturers of the end-level product.  But the Court cannot issue a declaratory judgment simply to provide bargaining leverage.  *Grayzel*, 2013 WL 1010321, at *4; *see also Step-Saver*, 912 F.2d at 648 (stating that a decree would not be sufficiently conclusive because "such a declaration would probably be an exercise in futility [opinion that] Step-Saver and the defendants would be left to do battle on [remaining] issue[s]").  Because the declaratory judgment Continental

---

[7]  The Third Circuit follows a three-part inquiry to determine whether the relief sought meets the elements for a declaratory judgment.  A party seeking declaratory relief must establish there is an actual adversity of interest, the declaration would have some practical utility in the case, and that the declaration would conclusively define the legal rights or relations of the parties. *Step-Saver*, 912 F.2d at 647.

US seeks would not conclusively resolve the dispute between the parties, the Court should dismiss Continental US's claims for declaratory relief as improper.  *Interdigital Commc'ns, Inc. v. ZTE Corp.*, C.A. No. 13-00009-RGA, 2014 WL 2206218, at *3 (D. Del. May 28, 2014) ("All the Court's determination of a FRAND rate would accomplish would be to give a data point from which the parties could continue negotiations. . . . the Court's FRAND finding would have little utility and serve little to no useful purpose.").

### 2.   *Exhaustion Is a Defense to a Particularized Infringement Claim That Has Not Been Identified or Asserted*

Continental US's request for a declaration of exhaustion fails for the additional reasons that it has not identified the specific patents that are purportedly exhausted under the SULA and because it has identified no forthcoming or threatened infringement actions by Nokia.[8]  Instead, Continental US relies on speculative indirect injuries from OEMs that may someday seek reimbursement for royalties that exceed FRAND rates for *unspecified* patents in connection with *unspecified* products that satisfy the substantial embodiment requirement.  Such cursory and boilerplate allegations fail to state a cognizable claim for declaratory judgment, where the "question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."  *Crypton Future Media, Inc. v. Hologram U.S., Inc.*, C.A. No. 14-1247-RGA, 2015 WL 5234042, at *2 (D. Del. Sept. 8, 2015) (quoting *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007)).

---

[8]  Contrary to Continental's recent reply brief in support of its motion to remand, Nokia does not allege or argue here that Continental US reasonably anticipates an infringement lawsuit from Nokia.  Continental US, instead, chose to bring a patent exhaustion declaratory judgment claim here that it did not bring in the Texas action.  That claim is both a basis for federal court jurisdiction and flawed on the merits such that it should be dismissed.

In fact, courts have dismissed other lawsuits seeking declaratory relief about exhaustion under a Qualcomm SULA where the "Complaint fail[ed] to identify any specific patent which [the plaintiff] requests that this Court declare exhausted, and [where] the alleged injuries for which [the plaintiff] seeks relief are speculative." *Broadcom Corp. v. Qualcomm Inc.*, C.A. No. 8-1829, 2009 WL 684835, at *6 (S.D. Cal. Mar. 12, 2009). This Court should reach the same result here.

## IV.   CONCLUSION

For all the foregoing reasons, Continental US's Complaint should be dismissed with prejudice.

OF COUNSEL:

Matthew D. Richardson
matt.richardson@alston.com
Mark A. McCarty
mark.mccarty@alston.com
Andrew J. Tuck
 andy.tuck@alston.com
Alston & Bird LLP
1201 West Peachtree Street
Atlanta, GA 30309
Telephone: 404-881-7000
Facsimile: 404-881-7777

Dated: April 9, 2021

/s/ Kelly E. Farnan
Kelly E. Farnan (#4395)
Blake Rohrbacher (#4750)
Richards, Layton & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
(302) 651-7700
farnan@rlf.com
rohrbacher@rlf.com

*Attorneys for Defendants Nokia Corporation,
Nokia of America Corporation, Nokia Solutions
and Networks Oy, and Nokia Technologies Oy*

- 18 -